Opinion issued August 29, 2002








 





In The

Court of Appeals

For The

First District of Texas






NO. 01-01-00671-CV






IN THE INTEREST OF C.T. AND I.T.






On Appeal from the 306th District Court

Galveston County, Texas

Trial Court Cause No. 00CP0001






OPINION ON REHEARING


 Texas Department of Protective and Regulatory Services's (TDPRS) motion
for rehearing is granted, and our Opinion of January 31, 2002 is withdrawn and the
following Opinion issued in its stead.

 TDPRS attempted to terminate Kimberly Toth and Christopher Petty's parental
rights to their child, C.T. It also attempted to terminate Toth and Acie Riley's
parental rights to their child, I.T. In the alternative, TDPRS requested it be named
sole managing conservator of C.T. and I.T. The trial court dismissed both termination
suits with prejudice. TDPRS appeals this decision. We affirm, but reform the
judgment to reflect the dismissal was without prejudice.

Background


 TDPRS's action against Toth and Petty, seeking termination of their parental
rights to C.T., stemmed from the death of C.T.'s twin. The autopsy report indicated
C.T.'s twin died from a blunt blow to the abdomen. Petty was the father of the twins,
but they were living with Toth and Riley when the alleged abuse occurred. Toth was
arrested and held without bond after the twin's death. While in jail, Toth gave birth
to I.T. Riley, I.T.'s father, was also in jail, but on unrelated charges.

 On March 16, 2000, an adversarial hearing was conducted with TDPRS and
attorneys for Toth and Riley, and the trial court awarded TDPRS temporary managing
conservatorship of I.T. 

 On March 30, 2001, one year later, the trial court conducted a hearing on
TDPRS's motion for continuance based on the unavailability of the medical
examiner. TDPRS explained that the medical examiner's testimony was necessary
because she had performed the autopsy on C.T.'s twin, and her testimony must be in
evidence before additional testimony could be elicited. In response to TDPRS's
request, the trial court stated, "How do I know, what's going to reassure me that this
Dr. Carter isn't going to be too important for the next time this is set to show up to
testify which is apparently what this says is she's just too important to come down
here." TDPRS explained the doctor had already been called to testify in another case
and was also scheduled to conduct a seminar. The trial court stated further, 

 Well, I'm not resetting a case just because somebody in Harris County
thinks they're too important to come down to Galveston County. This
case is a year and three months old. I've got other cases set for every
single trial week between now and the dismissal date on this case. I
think the dismissal date is July 2nd and I'm not going to bump all other
C.P.S. cases just because somebody out of Harris County can't get down
here across the county line.


At this point in the hearing, Petty's attorney informed the trial court that Petty was set
to start a criminal trial in Harris County on Monday, and Harris County would not
release him. When the trial court was told Harris County would not release Petty
under a bench warrant, the judge responded, "Well, they just think they're the most
important place in the world, don't they? Y'all can dismiss this suit or you can get
these people down here to testify. You need to go talk to your boss because I'm not
going to have Harris County holding up the whole process on our C.P.S. cases. This
case is already three months into an extension." 

 Petty's attorney then informed the trial court that Petty, who had been in the
Texas Department of Corrections and the Galveston jail during the pendency of the
case, had never been served, and he did not sign a waiver. Sua sponte, the trial court
said, "I'll be glad to dismiss this suit and send these children back to their mother." 
Riley's attorney told the court he had actually just filed a motion to dismiss and for
sanctions.

 Riley's motion to dismiss with prejudice was premised on the fact that, in
violation of section 262.201 of the Texas Family Code, (1) the adversarial hearing was
conducted more than 14 days after I.T. was originally picked up by TDPRS. I.T. was
born on February 24, 2000, and an order of protection was signed the next day. An
adversarial hearing was scheduled for March 9, within the 14-day time period, but
TDPRS filed an amended petition to change the spelling of I.T.'s name. TDPRS also
filed a motion to extend the emergency order. The order on the motion to extend was
never signed, and the adversarial hearing regarding I.T. was held on March 16th --
21days after I.T. was picked up by TDPRS. Riley contended that, since March 13,
2000, I.T. had unlawfully been in the possession of TDPRS and the case should be
dismissed.

 In addition, Riley sought sanctions because TDPRS never responded to his
Rule 194 request for disclosure. See Tex. R. Civ. P. 194. His request asked TDPRS
to delineate its legal theories and factual basis for its claims. TDPRS explained its
theories as to Toth, but made no reference to Riley or Petty.

 The attorney for TDPRS spoke up and announced she was attempting to amend
the petition because she had just realized C.T. had not been mentioned in the live
pleadings before the court. He had inadvertently been dropped from the suit when
an earlier amendment to the petition was filed. The amendment was filed less than
seven days before trial, and no leave of court was requested.

 The trial court asked Toth's attorney if he had a motion he wanted to make. He
responded that he moved for TDPRS's case to be dismissed and for the children to
be returned to the parent. There was no written motion relating to the dismissal of
C.T., and the motion requesting the dismissal of I.T.'s case was filed the day of the
hearing on TDPRS's motion for continuance. The trial court granted the motion to
dismiss with prejudice, disposing of the cases against Toth and Riley, and it denied
the request for sanctions. Later, without hearing, the trial court dismissed the case
against Petty.

Dismissal With Prejudice


 In its sole point of error, TDPRS argues the trial court should not have rendered
a dismissal judgment "with prejudice" against it where the case was not decided on
the merits. (2)

 TDPRS contends the dismissal was imposed due to TDPRS's failure to comply
with the statutory time frame or as a discovery sanction for not adequately responding
to the Rule 194 request. The trial court stated on the record it was denying the
sanctions, and it struck through the portion of the order relating to sanctions. As
such, clearly, the dismissal was not imposed as a discovery sanction.

 By dismissing the case with prejudice, TDPRS argues the trial court prevented
it from having a hearing on the merits of its cause because a dismissal with prejudice
functions as a final determination on the merits. See Mossler v. Shields, 818 S.W.2d
752, 754 (Tex. 1991). Orders dismissing cases with prejudice have full res judicata
and collateral estoppel effect, barring any subsequent suit arising out of the same facts
brought by the same party against the same respondent. Lentworth v. Trahan, 981
S.W.2d 720, 722 (Tex. App.--Houston [1st Dist.] 1998, no pet.).

 TDPRS concedes, however, that the Texas Family Code specifically provides
that "a dismissal and even denial of a termination case is without res judicata effect." 
Section 161.004 of the Texas Family Code provides:

 (a) The court may terminate the parent-child relationship after rendition
of an order that previously denied the termination of the parent-child
relationship if:


 (1) the petition under this section is filed after the date the
order denying termination was rendered;


 (2) the circumstances of the child, parent, sole managing
conservator, possessory conservator, or other party affected
by the order denying termination have materially and
substantially changed since the date that the order was
rendered;

 

 (3) the parent committed an act listed under Section
161.001 before the date the order denying termination was
rendered; and

 

 (4) termination is in the best interest of the child.


 (b) At a hearing under this section, the court may consider evidence
presented at a previous hearing in a suit for termination of the parent-child relationship of the parent with respect to the same child. 

 

Tex. Fam. Code Ann. § 161.004 (Vernon 1996).

 Toth argues the dismissal with prejudice is, in fact, a distinction without a
difference because there is no res judicata effect if the circumstances of the child,
parent, sole managing conservator, possessory conservator, or other party affected by
the order denying termination have materially and substantially changed since the
date that the order was rendered. See Tex. Fam. Code Ann. § 161.004 (Vernon
1996). Toth asserts that the return of the children to her is, in and of itself, a "material
and substantial change." 

 As TDPRS indicates, section 161.004 contemplates a denial of a termination,
not a dismissal. There was no finding based on the merits of the case.


 Conclusion

 We affirm the trial court's decision, but reform the judgment to indicate the
case was dismissed without prejudice.

 

 Davie L. Wilson

 Justice


Panel consists of Chief Justice Schneider and Justices Jennings and Wilson. (3) 


Do not publish. Tex. R. App. P. 47.4.



 
1. Section 262.201 of the Texas Family Code provides that:

 

 unless the child has already been returned to the parent,
managing conservator, possessory conservator, guardian,
caretaker, or custodian entitled to possession and the
temporary order, if any, has been dissolved, a full
adversary hearing shall be held not later than the 14th day
after the date the child was taken into possession by the
governmental entity.


Tex. Fam. Code Ann. § 262.201 (Vernon Supp. 2002).
2. TDPRS does not concede the propriety of the dismissal, but argues only that it was
improper to dismiss the action with prejudice.
3. Justice Davie L. Wilson, who retired on March 31, 2002, continues to sit by
assignment for the disposition of this case, which was submitted on December
17, 2001.